**ONSITE ADVERTISING SERVICES LLC, Petitioner—Appellant,**

v.

**CITY OF SEATTLE, Respondent— Appellee.**

No. 01–35380.
D.C. No. CV–00–01497–RSL.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 2002.

Decided June 7, 2002.

Before BRUNETTI, TROTT, and MCKEOWN, Circuit Judges.

MEMORANDUM *

Onsite Advertising Services ("Onsite") appeals the district court's order entering judgment for the City of Seattle ("Seattle"). Specifically, Onsite argues that the district court erred in upholding Seattle's interpretation and application of its sign ordinance, SMC § 23.84.036, and in rejecting Onsite's claim that the ordinance as applied to Onsite violated its rights to free speech under the First Amendment. We disagree, and affirm the order of the district court.

I.

Onsite is an advertising company that leases space for outdoor advertising signs on building walls and then arranges for businesses to place their advertising messages on the signs. Miller Brewing Company ("Miller") hired Onsite to place advertisements for its product on the Squire Building, located within Seattle's Pioneer Square Historic District, near the new Seattle Seahawks stadium and Safeco Field, home of the Seattle Mariners. Onsite informed Miller that the erection of signs in the Pioneer Square Historic District is generally prohibited, but that advertisements meeting the requirements for an "on-premises sign" under SMC § 23.84.036

may be issued a permit. SMC § 23.84.036 defines both "off-premises signs" and "on-premises signs."

In order to obtain a permit for an on-premises sign, an applicant must submit its proposed advertisement to Seattle's Department of Design Construction and Land Use ("DCLU") for approval. Onsite submitted a proposed advertisement to DCLU for approval that depicted a bottle of "Miller Genuine Draft" beer with beer flowing out of it, and the words "Never Miss a Genuine Opportunity." Both the Pioneer Square Preservation Board and the Director of the Department of Neighborhoods approved the sign; however, DCLU refused to approve the permit application. Although Miller had leased a small office in the Squire building for marketing and advertising purposes at the advice of Onsite, it was neither selling nor producing beer on the premises where the sign would be located, therefore, the sign did not meet the SMC § 23.84.036 definition of on-premises sign.

Onsite sent DCLU several alternative signs in hopes of obtaining a permit. All of the signs contained depictions of beer, or the Miller logo, or both, and DCLU rejected all of them for the same reason it rejected the original proposal. Finally, DCLU approved a sign depicting only the Miller logo and a photograph of Mt. Rainier, with no depiction of Miller products or written reference to Miller products.

Onsite filed a Land Use Petition in Washington state court challenging Seattle's rejection of its proposed Miller advertisements. Seattle removed the case to federal court. After a bench trial, the district court rejected Onsite's arguments and entered judgment in favor of Seattle. In this appeal, Onsite contends that the

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36-3.

district court erred in holding that Seattle's interpretation of SMC § 23.84.036 was "not erroneous," and that the regulation, as interpreted and applied to Onsite in this case, violated Onsite's rights to free speech.

## II.

Section 23.84.036 of the Seattle Municipal Code defines an on-premises sign as:

a sign or sign device used solely by the business establishment on the lot where the sign is located which displays either (1) commercial messages which are strictly applicable only to a use of the premises on which it is located, including signs or sign devices indicating the business transacted, principal services rendered, goods sold or produced on the premises, name of the business, and name of the person, firm or corporation occupying the premises; or (2) noncommercial messages.

In contrast, an off-premises sign relates to "a business activity, use, product or service *not* available on the premises upon which the sign is erected." SMC § 23.84.036 (emphasis added).

■ DCLU determined that, although Miller maintained an office at the Squire Building, the signs proposed by Onsite did not qualify as on-premises signs because they advertised Miller beer, a product that was neither sold nor produced at the Squire Building. Onsite argues that the words following "including" in the SMC § 23.84.036 definition of on-premises signs should not be interpreted as an exclusive list of permitted signs, but should merely be seen instead as examples of what on-premises signs may contain. It maintains that on-premises signs can contain messages about goods sold or produced off the premises. However, the plain language of the ordinance shows that this argument has no merit.

Seattle's interpretation of the Code was reasonable and not erroneous. The language following "including" in the definition of on-premises signs was intended to give direction as to what would be acceptable for an on-premises sign and to narrow the language preceding it. Onsite's suggested interpretation makes the phrase "sold or produced on the premises" superfluous and creates a conflict with the ordinance's definition of off-premises signs, which bans signs advertising "product[s] or service[s] not available on the premises upon which the sign is erected." SMC § 23.84.036. The ordinance was not designed to allow a company to advertise a good that it does not sell or produce at the site. That would abolish the difference between on-premises and off-premises signs.

## III.

■ Section 23.84.036 of the Seattle Municipal Code is a content-based restriction because it requires a nexus between the business office and the content of the sign. When commercial speech is subject to government restrictions, we must apply a four-part test to determine the validity of the restriction. The test inquires: (1) whether the speech is misleading or related to unlawful activity; (2) whether the government has a substantial interest; (3) whether the regulation directly advances the government interest involved; and (4) whether the restriction is no more extensive than necessary to accomplish the government's objective. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 566, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

The parties agree that prongs one and two of the *Central Hudson* test are satisfied because the signs at issue contained commercial speech that was both lawful

and truthful, and Seattle has a substantial interest in regulating traffic and safety aesthetics. We are therefore left to decide whether the regulation directly advances Seattle's interest and whether it is no more restrictive than necessary.

When we apply *Metromedia, Inc. v. San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) to this case, we conclude that the remaining issues must be resolved in Seattle's favor. In *Metromedia,* the Supreme Court considered a regulation virtually identical to SMC § 23.84.036. The Court upheld the content-based distinction between on-premise and off-premises signs in the San Diego ordinance under the *Central Hudson* test, holding that "the city could reasonably conclude that a commercial enterprise-as well as the interested public-has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere." *Metromedia,* 453 U.S. at 512, 101 S.Ct. 2882. This court has interpreted *Metromedia* as standing for the proposition that a City can either ban all signs or ban all signs with the exception of on-premises signs to advance the City's interests in traffic safety and aesthetics. *See Outdoor Sys., Inc. v. Mesa,* 997 F.2d 604, 610–11 (9th Cir.1993). Onsite argues than *Metromedia* no longer controls this case because in recent years the Supreme Court has applied the third and fourth prongs of the *Central Hudson* test with extra bite. *See e.g. 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). However, as this court previously noted, *Metromedia* has never been overruled, and "it is not for us

to overrule Supreme Court authority that is squarely on point." *Ackerley Communications of the Northwest, Inc. v. Krochalis,* 108 F.3d 1095, 1096 (9th Cir.1997).

Seattle has a substantial interest in allowing companies to advertise goods and services provided onsite, and the ordinance is no more extensive than necessary to accomplish that purpose. Accordingly, the ordinance meets the requirements of the *Central Hudson* test.

The judgment of the district court is AFFIRMED.